## BURCHARD vs. PHILLIPS and others.

Where B. loaned money to the owner of the equity of redemption of mortgaged premises to pay off a prior but second mortgage thereon, and took a mortgage upon the premises as a security for the repayment of the loan, and in consequence of the false representations of the mortgagor, that there was no other incumbrance upon the premises except the two prior mortgages, B. neglected to take an assignment of the second mortgage to protect himself against the incumbrance of a judgment, which was in fact a lien upon the premises, but subordinate to the lien of the first and second mortgages; *Held* that the equity of B. to be paid the amount of his mortgage out of the surplus proceeds of a sale of the premises, upon a foreclosure of the second mortgage, was equal to that of the owner of the judgment; although by the fraud of the mortgagor, the judgment creditor had obtained a legal priority.

Burchard *v.* Phillips.

And B. having obtained a master's report in his favor and a payment of his mortgage out of the surplus moneys, under a regular order of the court, in consequence of the neglect of the judgment creditor to give notice of his claim in time; *Held* that B. was entitled to retain the money, which he had then become legally entitled to by his superior vigilance.

Where the surplus moneys arising from the sale of mortgaged premises have been paid to a junior incumbrancer, under a regular order of the court, founded upon a master's report, in consequence of the neglect of a prior incumbrancer to give notice of his claim in due time, it is too late for the latter to obtain relief by a summary application to the court in the foreclosure suit.

But so long as the surplus fund remains in or under the control of the court, it is competent for such court to let in the prior incumbrancer to assert his claim to the surplus moneys, where his neglect to file his claim thereto in season is satisfactorily accounted for.

Where a fund in the court of chancery has been paid out to a person not entitled to it, under an order irregularly obtained, the court has jurisdiction, by a summary proceeding, to compel the party to restore the fund, thus improperly obtained without the authority of the court.

THIS was an appeal from a decision of the vice chancellor of the eighth circuit, denying the application of the appellants to set aside a master's report, as to the surplus moneys in a foreclosure suit, and the proceedings thereon; and to have the surplus moneys which the respondent C. H. Bryan had received, under the order of the court, refunded by him.

The mortgaged premises formerly belonged to the defendant J. Phillips, who mortgaged the same to the complainant in 1837; and the bill in this suit was filed to foreclose that mortgage. In September, 1840, Phillips conveyed the mortgaged premises to the defendant Parrish, subject to the payment of that mortgage, and took back from him another mortgage upon the premises, for $2117, to secure the payment of the purchase money, which Parrish had agreed to give for the premises, beyond the amount of Burchard's mortgage. In October, 1838, the appellants, the Messrs. Willetts of the city of New-York, recovered a judgment in the supreme court against Parrish, on which there was due at the time of the master's sale in this suit, in October, 1843, between four and five hundred dollars. On the 1st of May, 1841, Parrish applied to the respondent Bryan, as the executor and trustee of the estate of W. Crosset, for a loan of $1000, to be ap-

plied in part payment of the mortgage given to Phillips for the purchase money of the premises. , Parrish represented to him that there were no other incumbrances upon the premises, except that mortgage and the prior mortgage which had been given to Burchard. Upon the faith of that representation, and believing the same to be true, Bryan as such executor and trustee loaned Parrish the $1000, and took a mortgage upon the premises to secure the repayment of the loan; and the money thus loaned was applied in part payment of the mortgage which had been given to Phillips for the purchase money of the premises. The mortgage given to Phillips was afterwards foreclosed in chancery, for the non-payment of the balance due thereon, and the usual decree for sale was entered in that suit; which decree was subsequently assigned to Bryan the respondent.

In 1843, the complainant filed his bill in this cause to foreclose his mortgage, and the usual decree for foreclosure and sale was entered. Under that decree the mortgaged premises were sold by the master, on the 25th of October, 1843, and produced a surplus of $1898,28 beyond the complainant's debt and costs, and the master's fees and expenses upon the sale. The surplus was brought into court, and the report of sale was confirmed on the 4th of November, 1843. On the 6th of November, Bryan filed his claim to the surplus, as the assignee of the decree upon the mortgage given to Phillips, and as subsequent mortgagee of the premises for the $1000 loan of the 1st of May, 1841. And on the 15th of the same month the usual order of reference as to the surplus was regularly entered. The master's report was filed and confirmed, and an order was made by the court to pay the surplus moneys to Bryan, on the 22d of November, 1843; and the same were paid to him by the clerk on that day. On the 8th of November, 1843, the attorneys for the appellants learned for the first time that the judgment of the appellants was a lien upon the mortgaged premises, and that the premises had been sold under a decree of foreclosure. They immediately took measures to obtain the necessary information to enable them to make a claim for the surplus moneys. But the notices of their claim did not reach the master, and the clerk,

until two or three days after the money had been paid out to the respondent Bryan, under the order of the court.

*J. Rhoades,* for the appellants.

*M. T. Reynolds,* for the respondent.

The Chancellor. The equitable right of the respondent to the surplus money, is at least equal, if not superior, to that of the appellants. And he having obtained the same by due course of law, and his proceedings having been strictly regular, there is no reason why this court should interfere to deprive him of the fruits of his superior vigilance. The mortgage to Phillips, for the purchase money, although subsequent in time to the judgment of the appellants against the mortgagor, was entitled to preference in payment. And if the respondent, when he advanced $1000 of the trust moneys in his hands to be applied towards that mortgage, had taken an assignment of the mortgage pro tanto, instead of a new mortgage upon the premises, there could be no pretence, on the part of the appellants, that their judgment was entitled to a preference in payment over the moneys thus loaned by the respondent. The money, however, was advanced to pay a portion of the lien entitled to a preference, upon the security of the mortgaged premises alone, and upon the faith of Parrish's representations that there were no other incumbrances upon the premises than the two mortgages to Burchard and to Phillips, and that the new mortgage for the loan would take the place in point of priority of the part of the mortgage upon which the money was applied. And the appellants now ask the court to give them the benefit of this mistake of the respondent, after he has avoided the effect thereof by obtaining the surplus moneys under a regular proceeding, according to the course and practice of the court.

It is not necessary to express any opinion upon the question whether the respondent, under the circumstances, was not in equity entitled to be subrogated to the rights of the mortgagee upon whose mortgage this loan was applied; so as to give the

respondent the preference over the general lien of the judgment, even if the appellants had filed their claim before the reference to the master in relation to the rights to the surplus moneys. For if the appellants had acquired a preference by a mere accident or mistake on the part of the respondent, and had lost such preference afterwards by a similar mistake or accident, on their part, in neglecting to inquire as to their rights and to file their claim in season, a court of equity ought not to interfere to restore the preference which they had acquired as well as lost by mere mistake and accident.

I also think the vice chancellor was right in supposing that it was too late for the appellants to apply for summary relief, after the court had lost its control over the surplus moneys by a payment thereof to another claimant, under an order of the court regularly obtained. So long as the fund remains in court, I have no doubt it is competent for the court to let in an incumbrancer to assert his claim to the surplus moneys, where the equity of the case is with him, and his neglect to file his claim in due season is satisfactorily accounted for. In the analogous case of a bill to administer the estate of a deceased person, a creditor who has neglected to come in and prove his debt before the master within the time limited for that purpose, may be permitted to come in, upon terms, so long as the fund remains under the control of the court. I am not aware of any case, however, in which the court has permitted a creditor to come in, under the decree, after the fund has all been paid out to other creditors or legatees, under an order regularly obtained. But where the money has been paid out under an order irregularly obtained, I presume the court has jurisdiction, in a summary proceeding, to compel a party who has obtained possession of its funds improperly, and without its authority, to restore the same.

Here the proceedings, on the part of the respondent, were not only perfectly regular, but they appear to have been conducted in good faith. It is true he had notice of the recovery of the complainant's judgment as early as October, 1842. But from the information obtained from Parrish, and from the letter of Williams, who was agent of the appellants in obtaining the security for

their debt, the respondent had reason to believe that the payment of that judgment had been fully provided for without resorting to the lien thereof upon the mortgaged premises.

The order appealed from must therefore be affirmed with costs.